1          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF TEXAS
2                AUSTIN DIVISION

3   MICHAEL L. BUESGENS      ) Docket No. A 05-CA-243 SS
                             )
4   vs.                      ) Austin, Texas
                             )
5   JOHN W. SNOW             ) October 23, 2006

6

7          TRANSCRIPT OF ALL PENDING MATTERS
        BEFORE THE HONORABLE SAM SPARKS

8

9   APPEARANCES:

10  For the Plaintiff:        Mr. Michael L. Buesgens
                              Pro Se
11                            3112 Windsor Road, #A322
                              Austin, Texas 78703

12

13  For the Defendant:        Mr. R. Barry Robinson
                              Assistant U.S. Attorney
14                            816 Congress Avenue, Suite 1000
                              Austin, Texas 78701

15

16  For EEOC:                 Ms. Jennifer Randall
                              Equal Employment Opportunity Comm.
17                            San Antonio District Office
                              5410 Fredericksburg Road
18                            San Antonio, Texas 78229

19

20  Court Reporter:           Ms. Lily Iva Reznik, RPR, CRR
                              200 W. 8th Street
21                            Austin, Texas 78701
                              (512)916-5564

22

23

24

25  Proceedings recorded by mechanical stenography, transcript
09:00:36  produced by computer.

| | | |
|---|---|---|
| 09:00:36 | 1 | THE COURT:  05-CA-243, <u>Michael Buesgens vs. John W.</u> |
| 09:00:54 | 2 | <u>Snow, Secretary of the Treasury.</u> |
| 09:01:04 | 3 | MR. ROBINSON:  Good morning, your Honor.  Barry |
| 09:01:06 | 4 | Robinson on behalf of the Secretary of the Department of |
| 09:01:08 | 5 | Treasury. |
| 09:01:08 | 6 | MS. RANDALL:  Jennifer Randall on behalf of the Equal |
| 09:01:10 | 7 | Employment Opportunity Commissioner, your Honor. |
| 09:01:12 | 8 | THE COURT:  Mr. Buesgens not with us? |
| 09:01:14 | 9 | MR. ROBINSON:  I don't see him, your Honor. |
| 09:01:16 | 10 | THE COURT:  Okay.  Go down to the first floor, call Mr. |
| 09:01:22 | 11 | Buesgens' name, please, sir. |
| 09:01:24 | 12 | COURT SECURITY:  Yes, sir. |
| :01:24 | 13 | THE COURT:  Check and see if perhaps he's in the |
| 09:01:28 | 14 | courtroom on the first floor.  You know who he is, do you not? |
| 09:01:32 | 15 | COURT SECURITY:  Yes, sir. |
| 09:01:32 | 16 | THE COURT:  Okay.  See if he's in the courthouse, |
| 09:01:34 | 17 | please. |
| 09:04:06 | 18 | All right.  I'm advised by the security officer that |
| 09:04:10 | 19 | Mr. Buesgens is not present.  And I had, of course, previously |
| 09:04:18 | 20 | overruled a motion for continuance.  Mr. Buesgens, he has filed |
| 09:04:22 | 21 | several things, including a filing Friday.  And then, here's |
| 09:04:28 | 22 | another filing Friday.  So -- and then, I received Friday, also, |
| 09:04:44 | 23 | a notice from the clerk of the Judicial Panel On Multi-District |
| 09:04:50 | 24 | Litigation that Mr. Buesgens is set for oral argument on whether |
| 9:04:58 | 25 | or not this case ought to go to MDL.  It's set for the 20th day |

| | |
|---|---|
| 09:05:06 | 1 |
| 09:05:14 | 2 |
| 09:05:18 | 3 |
| 09:05:24 | 4 |
| 09:05:32 | 5 |
| 09:05:34 | 6 |
| 09:05:40 | 7 |
| 09:05:42 | 8 |
| 09:05:44 | 9 |
| 09:05:46 | 10 |
| 09:07:24 | 11 |
| 09:07:24 | 12 |
| :07:26 | 13 |
| 09:07:28 | 14 |
| 09:07:34 | 15 |
| 09:07:38 | 16 |
| 09:07:42 | 17 |
| 09:07:46 | 18 |
| 09:07:52 | 19 |
| 09:07:56 | 20 |
| 09:08:02 | 21 |
| 09:08:06 | 22 |
| 09:08:10 | 23 |
| 09:08:12 | 24 |
| ⌐9:08:14 | 25 |

1  of -- excuse me, November 30, 2006.  I can't imagine why they've

2  set it for an oral argument.  Mr. Buesgens has already had his

3  appeals dismissed from the Circuit Court.  I intend to try this

4  case one day after his hearing on the MDL on December the 1st.

5          But what is the situation now?  Y'all keep filing all

6  of these motions.  I'm not sure without Mr. Buesgens here --

7  apparently, he has responded to the summary judgment.

8          THE CLERK:  He's showing up now.

9          COURT SECURITY:  Just came in the front door, sir.

10          THE COURT:  Well, good.

11          MR. BUESGENS:  Good morning.

12          THE COURT:  Good morning, sir.  We've been waiting for

13  you, Mr. Buesgens.

14          All right.  I have pending motion for leave to file a

15  supplemental amended complaint, motion to supplement with cause

16  of action and jurisdictional classifications, motion to

17  supplement the record with an additional complaint, motion for

18  discovery, and motion to compel, motion to extend page limits,

19  motion for relief on U.S. Attorney R. Barry Robinson, Re:

20  Witness/Exhibit List, and a motion for summary judgment.  I have

21  received the cross-motion for summary judgment filed on October

22  the 19th by Mr. Buesgens.

23          I assume that's your response to the government's

24  motion for summary judgment.

25          MR. BUESGENS:  Yes, your Honor, it is.

| | | |
|---|---|---|
| 09:08:16 | 1 | THE COURT:  All right.  And then, I received, also, |
| 09:08:28 | 2 | today the EEOC's motion to quash and motion for protective order, |
| 09:08:34 | 3 | and the EEOC's motion to quash Mr. Buesgens' subpoena on Judge |
| 09:08:42 | 4 | Robert Powell.  And Lord only knows how many other motions.  As |
| 09:08:52 | 5 | I've indicated, I have received from the Multi-District |
| 09:08:56 | 6 | Litigation Clerk a notice that Mr. Buesgens has an oral argument |
| 09:09:02 | 7 | on November 30, 2006 with regard to his request for MDL |
| 09:09:08 | 8 | attention. |
| 09:09:14 | 9 | So I thought we probably ought to have a little meeting |
| 09:09:16 | 10 | and find out -- everybody get their signals straight.  This case |
| 09:09:22 | 11 | will proceed to trial.  It will go to trial in December.  Now, |
| 09:09:28 | 12 | let's start off, Mr. Buesgens, with you with regard to your |
| :09:30 | 13 | amended complaint.  First, have you seen an amended complaint, |
| 09:09:34 | 14 | Mr. Robinson? |
| 09:09:36 | 15 | MR. ROBINSON:  No, your Honor.  Not recently.  There |
| 09:09:38 | 16 | was a amended complaint during the appeal process, I believe. |
| 09:09:44 | 17 | THE COURT:  What -- are you contemplating filing |
| 09:09:46 | 18 | another complaint, Mr. Buesgens, or have you filed it? |
| 09:09:52 | 19 | MR. BUESGENS:  Are you talking about the cross-claim |
| 09:09:54 | 20 | against the EEOC, Judge -- |
| 09:09:58 | 21 | THE COURT:  No.  This is for a supplemental amended |
| 09:10:00 | 22 | complaint, No. 20.  It was filed -- there are a lot of these old |
| 09:10:16 | 23 | -- this is filed June 7 of 2005.  And then, you've got a motion |
| 09:10:24 | 24 | to supplement cause of action and jurisdiction filed on November |
| 09:10:30 | 25 | 29, 2005.  And a motion to supplement the record with an |

```
09:10:34   1   additional complaint, filed December 7, 2005, and that one was to
09:10:44   2   assert abuse of process and intentional infliction of emotional
09:10:50   3   distress against Mr. Snow, the U.S. Attorney Sutton, Assistant
09:10:54   4   United States Attorney Barry Robinson, Michael Salyards,
09:11:00   5   S-A-L-Y-A-R-D-S, who was, apparently, a Treasury attorney, Mary
09:11:04   6   Ellen Krcha, K-R-C-H-A, and Deputy General Counsel of the
09:11:12   7   Department of Treasury whose name is not mentioned.  Does that
09:11:22   8   ring any bells?
09:11:24   9          MR. BUESGENS:  Yes, it does.  Your Honor, to begin, I'd
09:11:28  10   like to say that I don't think we should be having a hearing
09:11:30  11   today.
09:11:30  12          THE COURT:  Okay.  Thank you.  Now, answer my question.
':11:34   13          MR. BUESGENS:  What?
09:11:36  14          THE COURT:  On what basis?  Because of the MDL?
09:11:40  15          MR. BUESGENS:  On what basis what?  The amended --
09:11:42  16          THE COURT:  That we shouldn't be having a hearing.
09:11:44  17          MR. BUESGENS:  Oh, this case should be in the Court of
09:11:46  18   Appeals.  It was sent back here inappropriately.
09:11:50  19          THE COURT:  Well, you have to argue with the Court of
09:11:52  20   Appeals on that.  The Court of Appeals correctly held that you
09:11:56  21   had no basis in which to file an appeal.  There was no order in
09:12:00  22   which you could appeal, so they dismissed the appeal and sent it
09:12:04  23   back to me.  I would be perfectly happy with your case in the
09:12:08  24   Court of Appeals, but it's not.  It's going to go to trial in
09:12:10  25   December.
```

| | | |
|---|---|---|
| 09:12:12 | 1 | MR. BUESGENS:  Your Honor, excuse me. |
| 09:12:12 | 2 | THE COURT:  Yes, sir. |
| 09:12:12 | 3 | MR. BUESGENS:  I filed an amended appeal as of right |
| 09:12:16 | 4 | taken.  And a Federal Rule of Appellate Procedure 4(d) says that |
| 09:12:20 | 5 | they should send that -- that the Fifth Circuit should send that |
| 09:12:24 | 6 | to the district court, and they didn't do that. |
| 09:12:28 | 7 | THE COURT:  That they should send what, sir? |
| 09:12:30 | 8 | MR. BUESGENS:  My amended appeal as of right taken. |
| 09:12:32 | 9 | THE COURT:  Your amended appeal as of right.  The only |
| 09:12:36 | 10 | thing I have is the case remanding it back to trial on September |
| 09:12:42 | 11 | 6th, 2006. |
| 09:12:44 | 12 | MR. BUESGENS:  May I approach the bench with these |
| ʼ:12:48 | 13 | documents? |
| 09:12:48 | 14 | THE COURT:  Well, if you filed them, I will get them in |
| 09:12:50 | 15 | the -- I can get them by computer. |
| 09:12:54 | 16 | MR. BUESGENS:  Well, the Fifth Circuit tells me they |
| 09:12:56 | 17 | have private filings and public filings.  And my amended appeal |
| 09:13:02 | 18 | as of right taken was put into some private filing that they |
| 09:13:06 | 19 | have. |
| 09:13:06 | 20 | THE COURT:  A private filing? |
| 09:13:08 | 21 | MR. BUESGENS:  That's what I've been told.  And not |
| 09:13:10 | 22 | only that, the docket sheet doesn't even indicate appropriately |
| 09:13:16 | 23 | what I filed.  They just write a letter referencing notice of |
| 09:13:18 | 24 | appeal. |
| ᴖ9:13:50 | 25 | THE COURT:  The only thing that we can see from the |

| 09:13:52 | 1 | computer, Mr. Buesgens, is on October the 11th, 2006, the Court |
|---|---|---|

09:13:52   1   computer, Mr. Buesgens, is on October the 11th, 2006, the Court

09:14:00   2   of Appeals received receipt No. 387643 regarding $455. I don't

09:14:16   3   know if that's a bill of cost. I don't know what that $455 are.

09:14:22   4        MR. BUESGENS: Excuse me, your Honor. I have the

09:14:24   5   documents right here.

09:14:26   6        THE COURT: All right. Well, you can approach. Just

09:14:36   7   hand it to the clerk. You're appealing the Fifth Circuit's order

09:14:44   8   of dismissing the appeal?

09:14:46   9        MR. BUESGENS: Well, I was -- no. I appealed it in

09:14:50   10  this court with -- on Judge Sparks' final orders.

09:14:54   11       THE COURT: I haven't had any final orders. That's why

09:14:56   12  they keep sending your appeal back. We haven't tried this case

:15:00    13  yet, Mr. Buesgens.

09:15:02   14       MR. BUESGENS: Okay. Well, I have a dispute with the

09:15:04   15  final order. I believe there's final orders in there. And

09:15:08   16  that's what I appealed, and I filed a notice of appeal. Then on

09:15:14   17  August 24th, I filed an amended appeal as of right taken in the

09:15:18   18  Fifth Circuit, and the Fifth Circuit did not send that to the

09:15:24   19  district court, like they were supposed to. Federal Rule of

09:15:30   20  Appellate Procedure 4(d).

09:15:30   21       THE COURT: Well, that's your problem with the

09:15:36   22  district. But what I have is an opinion dismissing the appeal

09:15:44   23  because there's no order for which you can appeal. And here,

09:15:50   24  you've got an October 3rd, 2006 order denying your motion to

09:15:56   25  reconsider. I don't know --

| | | |
|---|---|---|
| 09:16:00 | 1 | MR. BUESGENS:  But, your Honor, they didn't consider |
| 09:16:02 | 2 | the amended appeal as of right taken.  They ignored it completely |
| 09:16:06 | 3 | and didn't send it to the district court. |
| 09:16:08 | 4 | THE COURT:  Hand that back to him, please.  Okay. |
| 09:16:10 | 5 | Well, you can call the clerk and find out what it is. |
| 09:16:12 | 6 | MR. BUESGENS:  Excuse me, your Honor.  What clerk? |
| 09:16:14 | 7 | THE COURT:  The Clerk of the Fifth Circuit. |
| 09:16:16 | 8 | MR. BUESGENS:  I've talked to them.  They won't deal |
| 09:16:18 | 9 | with it.  They won't talk to me.  It's finished with them. |
| 09:16:20 | 10 | THE COURT:  Okay.  Well, then, I suggest you not waste |
| 09:16:24 | 11 | your time and you prepare for trial in December. |
| 09:16:26 | 12 | MR. BUESGENS:  Your Honor, excuse me.  I don't |
| ·:16:28 | 13 | understand why the judge didn't sign this order dismissing the |
| 09:16:34 | 14 | appeal.  It's signed here by the Clerk. |
| 09:16:40 | 15 | THE COURT:  The Clerk has the authority in the Circuit |
| 09:16:42 | 16 | Court to execute an order as directed by the panel of judges who |
| 09:16:54 | 17 | handle the appeal that I assume that he's exercising.  I do not |
| 09:17:00 | 18 | know.  I do not know why the Clerk signed it but -- |
| 09:17:04 | 19 | MR. BUESGENS:  I don't understand why they don't have |
| 09:17:06 | 20 | to follow the Rules of Appellate Procedure. |
| 09:17:08 | 21 | THE COURT:  Well, I can't help you on that. |
| 09:17:14 | 22 | MR. BUESGENS:  Okay.  Thank you. |
| 09:17:14 | 23 | THE COURT:  I just can't help you.  I don't really |
| 09:17:18 | 24 | understand.  You filed an appeal, but you didn't have anything |
| ⌐9:17:22 | 25 | under the law which you could appeal.  You just have what we call |

09:17:24   1   an interlocutory order.  So the Fifth Circuit says this is not an

09:17:30   2   appealable order.  There's no final disposition in this order, so

09:17:34   3   they dismissed it.  You filed a motion to reconsider and this

09:17:38   4   motion to appeal as a matter of right.  I'm not sure what that

09:17:42   5   is, but you filed it.

09:17:44   6           MR. BUESGENS:  Your Honor, excuse me.  I filed an

09:17:46   7   amended appeal as of right taken and specified the orders, like I

09:17:50   8   was supposed to do, which I didn't do in the notice of appeal so

09:17:54   9   they could look at the specific orders to see which ones I was

09:17:56  10   disputing and calling final orders, and they didn't even review

09:18:00  11   that.  They just discarded it.

09:18:02  12           THE COURT:  Yeah.  I'm certain that that's correct.

:18:10   13   Okay.  But now the case is back here.

09:18:12  14           MR. BUESGENS:  But it shouldn't be.

09:18:14  15           THE COURT:  Well, it is.  Life's not perfect, I guess.

09:18:20  16   But it is back here.  I have the responsibility.  It's been set

09:18:22  17   for a long time.  And until you get a final order, you're not

09:18:26  18   going to be able to appeal anything.

09:18:28  19           MR. BUESGENS:  Your Honor, that's what I was appealing,

09:18:30  20   your decisions.  You made a decision I believe is a final order,

09:18:34  21   and that's why I appealed it to the Fifth Circuit.

09:18:36  22           THE COURT:  No.  No.  The final order will be a

09:18:38  23   judgment that you don't take anything or a judgment that you have

09:18:42  24   a judgment against the people who you've sued.

09:18:46  25           MR. BUESGENS:  Your Honor, you've made decisions in

09:18:48    1    this case as to what the status of it is regarding my employment.

09:18:54    2    You've got an order issued that says that I was going to be fired

09:18:58    3    from my job.  You've made a decision as to what's going -- what

09:19:02    4    happened before we even got there.  That's a final order.

09:19:04    5            THE COURT:  No.  The only decisions I have made in this

09:19:10    6    case is that the issues that you brought up subsequent to the

09:19:14    7    termination of your employment, which were issues in the lawsuit

09:19:20    8    that's pending in Judge Yeakel's court.  The eviction, the

09:19:28    9    discrimination, the retaliation, all of that has nothing to do

09:19:32   10    with this lawsuit.  This lawsuit is to determine your complaints

09:19:38   11    that the termination of your employment was valid or invalid, and

09:19:46   12    that's what we're going to try in December.  The rest of those

:19:50    13    issues are in the other lawsuit.  The problem that you had with

09:19:54   14    housing that came after the termination is not involved in this

09:19:58   15    lawsuit.  All of those issues are involved in the other lawsuit.

09:20:02   16            MR. BUESGENS:  Your Honor, excuse me.

09:20:04   17            THE COURT:  Yes, sir.

09:20:04   18            MR. BUESGENS:  IRS employees lived at the Falcon Ridge

09:20:08   19    Apartments.  It's one mile from where we worked at 1821 Directors

09:20:14   20    Boulevard.  IRS employees polluted the environment at the Falcon

09:20:18   21    Ridge Apartments in 2003, and it continued on and that's what led

09:20:22   22    up to my housing discrimination.  It's connected.  Furthermore,

09:20:28   23    when I was evicted, all of my belongings were stolen, all my

09:20:32   24    evidence and exhibits for this case are gone.  Everything, my

09:20:36   25    books, my notes, everything is gone, and no one seems to know

09:20:40   1   where they are.

09:20:42   2          THE COURT:  Well, I don't know where they are, Mr.

09:20:44   3   Buesgens.  And all I know is that the only issue that's going to

09:20:48   4   be tried in this lawsuit is whether or not the termination of

09:20:52   5   your employment violated any federal statutes.

09:20:56   6          MR. BUESGENS:  Your Honor, the EEOC filed a motion on

09:20:58   7   the 20th.  I just saw it this morning on Pacer, and they're

09:21:04   8   claiming that this is a trial de novo, and I don't see any trial

09:21:06   9   de novo here.

09:21:10  10          THE COURT:  Well, we haven't had any trial at all.

09:21:12  11   I've been trying to get this case to trial for two years.

09:21:14  12          MR. BUESGENS:  Well, they're saying it's a de novo,

1:21:18   13   whatever.  We're not in a de novo, and that's one of their issues

09:21:20  14   in their filing on the 20th.

09:21:22  15          THE COURT:  Well, we'll find out, in just a minute,

09:21:26  16   what the EEOC's position is.  My question to you is, sir, have

09:21:32  17   you filed whatever complaint you want to go to trial on?

09:21:38  18          MR. BUESGENS:  Not yet.  No.

09:21:38  19          THE COURT:  Well, the time for filing is long since

09:21:42  20   passed; it was August.  And if you wish to file something other

09:21:52  21   than -- I can't imagine anything else that you could file,

09:21:56  22   frankly, but I don't know what else you're going to want to file.

09:21:58  23   But the only thing in August we're going to be trying is the

09:22:04  24   validity or invalidity of the termination of your employment.

09:22:10  25   That's all.  The other issues subsequent, that occurred

09:22:14    1  subsequent to your employment are not in this particular lawsuit.

09:22:20    2          MR. BUESGENS:  Your Honor, it's my understanding that

09:22:22    3  the termination of my employment is not the issue in this case,

09:22:24    4  it's based on the EEOC hearing that dealt with Rehabilitation Act

09:22:30    5  -- reasonable accommodation.

09:22:30    6          THE COURT:  That's right.  And your position is that

09:22:34    7  termination was wrong because they didn't reasonably accommodate

09:22:38    8  your alleged disability.

09:22:40    9          MR. BUESGENS:  Your Honor, I don't have the

09:22:42   10  constructive discharge in this court.  I don't have an issue with

09:22:44   11  that here.  I didn't bring it up here.

09:22:50   12          MR. ROBINSON:  That's correct, your Honor.  And he

1:22:50    13  wasn't discharged.  He applied for medical disability retirement,

09:22:54   14  which was approved in March of '05, and that's when he retired.

09:22:58   15          MR. BUESGENS:  Involuntarily I applied.

09:23:00   16          MR. ROBINSON:  Mr. Buesgens is correct.  The issue in

09:23:04   17  this lawsuit is he did not file a discrimination complaint,

09:23:08   18  exhaust his administrative remedies as to that issue.

09:23:10   19          THE COURT:  All right.  Well, what is in this lawsuit?

09:23:12   20  That's one of the reasons I asked y'all here.  I've been trying

09:23:16   21  to get something tried in this case for two years so that Mr.

09:23:20   22  Buesgens can have his appeals, if he wants them.

09:23:22   23          MR. ROBINSON:  I understand, your Honor.  May I?

09:23:26   24          THE COURT:  Sure.

09:23:28   25          MR. ROBINSON:  Three issues in the case are the three

09:23:32  1  administrative complaints below.  One dealt with -- it's a

09:23:36  2  retaliation claim.  Mr. Buesgens claims that he had 71 hours of

09:23:42  3  "use or lose" leave that the agency would not allow him to

09:23:44  4  forfeit and reinstate it.  He wanted to be furloughed and then,

09:23:50  5  draw unemployment compensation.

09:23:54  6          Back up a little bit, your Honor.  Mr. Buesgens is a

09:23:56  7  seasonal employee for the IRS, so he works, roughly, from January

09:24:00  8  to August of each year.  He's furloughed -- or October, rather.

09:24:08  9  He's furloughed and then, he comes back sometime in the

09:24:12  10  January-February time frame.  In 1999, he applied for a position

09:24:14  11  that was a contact service representative, which required

09:24:20  12  answering toll-free calls from taxpayers.  So this is back -- the

:24:26  13  complaint is 71 hours of "use or lose" leave.

09:24:30  14          The second complaint that was investigated and

09:24:34  15  litigated below was -- had to do with whether the IRS reasonably

09:24:36  16  accommodated his medical condition.  Mr. Buesgens contends he's

09:24:40  17  bipolar and suffers from depression.  His third complaint is --

09:24:46  18          THE COURT:  Now, this is the one where he was not able

09:24:48  19  to handle telephone calls, and he was offered another position

09:24:52  20  because there wasn't a position available of the same number, and

09:24:58  21  he either declined or --

09:25:02  22          MR. ROBINSON:  Correct, your Honor.

09:25:04  23          THE COURT:  All right.

09:25:06  24          MR. ROBINSON:  The third complaint was his -- one of

:25:10  25  his supervisors, Mr. Don Tawney, had counseled him regarding some

09:25:14   1  unprofessional behavior when he would talk to taxpayers.  And,

09:25:20   2  also, Mr. Buesgens complained to Mr. Tawney that one of his

09:25:24   3  coworkers had threatened him with a scissors at the workplace.

09:25:30   4  When that scissor incident was investigated, it was found that

09:25:34   5  the female employee knits at her desk at noon, and there was no

09:25:40   6  substantiated threat.

09:25:42   7          Mr. Buesgens complains about those two areas, complains

09:25:48   8  he was harassed by his supervisor and was subjected to hostile

09:25:50   9  work environment.  I'd submit to the Judge, as briefed in the

09:25:54  10  government's motion for summary judgment, that the first

09:25:56  11  complaint and the last complaint, third complaint, are just

09:26:00  12  frivolous, and there's no basis for recovery.

:26:04    13          As to the Rehabilitation Act claim, in May of 2002, Mr.

09:26:12  14  Buesgens started bringing in reports, medical reports from his

09:26:16  15  doctor.  Initially, it was Mr. Buesgens' request that he be taken

09:26:20  16  off phone duty for 30 days.  The agency accommodated Mr. Buesgens

09:26:24  17  by taking him off phone duty.  That was in May of 2002.  In June

09:26:28  18  of 2002, he brings in another note from his physician requesting

09:26:32  19  an extension for 60 days for Mr. Buesgens to be off phone duty.

09:26:38  20  Again, the IRS complied with that request.

09:26:40  21          In August of 2002 --

09:26:42  22          THE COURT:  Did he work during these period of time?

09:26:44  23          MR. ROBINSON:  He did, your Honor, but he wasn't making

09:26:48  24  phone calls.

9:26:48   25          THE COURT:  On the phone.

| | |
|---|---|
| 09:26:50 | 1 |
| 09:26:52 | 2 |
| 09:26:54 | 3 |
| 09:27:00 | 4 |
| 09:27:02 | 5 |
| 09:27:06 | 6 |
| 09:27:10 | 7 |
| 09:27:14 | 8 |
| 09:27:16 | 9 |
| 09:27:20 | 10 |
| 09:27:24 | 11 |
| 09:27:34 | 12 |
| :27:40 | 13 |
| 09:27:44 | 14 |
| 09:27:52 | 15 |
| 09:27:56 | 16 |
| 09:28:02 | 17 |
| 09:28:04 | 18 |
| 09:28:06 | 19 |
| 09:28:10 | 20 |
| 09:28:18 | 21 |
| 09:28:22 | 22 |
| 09:28:24 | 23 |
| 09:28:28 | 24 |
| 09:28:32 | 25 |

MR. ROBINSON:  Correct.  In August of 2002, Mr.
Buesgens brought in another doctor's note that said --
recommended he be off phone duty altogether until further notice.
At that point, his supervisor recommended that since it looks
like it's going to be permanent that he needed to go through the
reasonable accommodation process with the agency.  In September
'02, that process began.

Looking at the administrative record, it looked like
the medical documentation was not received by the agency in
September.  Mr. Buesgens was furloughed in October of '02, came
back to work in January of '03.  And that's when Mr. Don Tawney
got involved, his supervisor at that time, and Mr. Buesgens
stayed off phone duty, and then, the agency sent out a request to
all the departments within the IRS and the commuting distance of
Austin, and explained that we're looking for a position for Mr.
Buesgens that requires no phone duty, no phone contact with
taxpayers.

Ultimately, it was determined that the only job
available was a GS-4 clerk position.  All the other 8 positions
and 7 positions required phone contact with the public.  When Mr.
Buesgens was offered that GS-4 clerk job, he turned it down, and
he wrote on the offer, I will contact my physician to see if I
can get authorization to go back on the phones, and, indeed, he
did.  His doctor released him to go back on the phones up to four
hours a day for a 90-day period.  Mr. Tawney explained to Mr.

09:28:36    1    Buesgens that he would honor that request, but that the 90-day

09:28:42    2    period would end September 26th of '03, at which time he would go

09:28:48    3    back to his regular duties.  Mr. Buesgens was furloughed in

09:28:50    4    October of '03.

09:28:52    5          THE COURT:  When was the doctor's release?

09:28:54    6          MR. ROBINSON:  It was in -- I believe it was in April,

09:28:58    7    your Honor, April-May time frame.  But it gave him 90 days --

09:29:00    8    additional days of being off the phones.  So that was honored

09:29:06    9    until he was furloughed, again, in October of '04 -- '03.  When

09:29:16   10    he came back to work in '04, he, again, worked for another

09:29:20   11    supervisor, Ms. Mary Carroll.  At that time, she wasn't aware

09:29:24   12    that Mr. Buesgens was on limited duty and that had applied for a

:29:32     13    reasonable accommodation.  She gets with Mr. Tawney, explains to

09:29:34   14    him that, yes, indeed, he did -- had applied for reasonable

09:29:38   15    accommodation.  The agency gave him an offer back April which Mr.

09:29:42   16    Buesgens declined, and that he was back on regular phone duty.

09:29:48   17          Given that history, Ms. Carroll did allow him to -- he

09:29:54   18    was the last one to go on phone duty and the first one to come

09:29:58   19    off.  And that particular year, in '04, the phone duty was only

09:30:02   20    -- for her section was only from January to April 15th.  After

09:30:06   21    that, the only phone duty was if Mr. Buesgens had to make an

09:30:12   22    outgoing call to a taxpayer to resolve some sort of tax issue.

09:30:14   23          Mr. Buesgens was furloughed in -- I believe in October

09:30:22   24    of '04 -- back up.  In August of '04, Mr. Buesgens applied for

09:30:28   25    medical disability retirement.  Again, he was furloughed on or

09:30:30    1    about October of '04.  Came back to work in January, February of

09:30:38    2    '05, had a different supervisor.  His original application for

09:30:46    3    disability retirement was denied because he did not submit the

09:30:50    4    appropriate or sufficient medical documentation, which Mr.

09:30:54    5    Buesgens rectified which led to his OPM approving his medical

09:31:00    6    disability retirement in -- I know it was effective March of

09:31:04    7    '05.  That's when he retired.  I want to say it's March of '05.

09:31:10    8        So the issues before the Court regarding the rehab case

09:31:14    9    is whether -- back in '03 whether the agency reasonably

09:31:20   10    accommodated him by offering him the GS-4 position.  There's no

09:31:30   11    adverse employment action.

09:31:30   12        THE COURT:  Where does the EEOC come in with all of

:31:34     13    these pleadings?

09:31:34   14        MS. RANDALL:  Your Honor, we are not a party to this

09:31:36   15    case.  However, plaintiff subpoenaed EEOC Administrative Judge

09:31:42   16    Robert Powell, and so, we filed a motion to quash.

09:31:44   17        THE COURT:  No, no.  I understand that.  And he's

09:31:48   18    alleged the EEOC didn't do their job, didn't do any

09:31:52   19    investigation, and but when was that?  Do you know?

09:31:58   20        MR. ROBINSON:  Again, like I said, your Honor --

09:32:00   21        THE COURT:  I'm going to give you full chance in just a

09:32:02   22    minute to respond.

09:32:02   23        MR. BUESGENS:  I know.

09:32:04   24        MR. ROBINSON:  Looking at the hearing transcript and in

09:32:10   25    the things -- all the pleadings that have been filed in this case

| | |
|---|---|
| 09:32:12 | 1 |
| 09:32:14 | 2 |
| 09:32:18 | 3 |
| 09:32:20 | 4 |
| 09:32:24 | 5 |
| 09:32:28 | 6 |
| 09:32:32 | 7 |
| 09:32:34 | 8 |
| 09:32:38 | 9 |
| 09:32:42 | 10 |
| 09:32:46 | 11 |
| 09:32:50 | 12 |
| 1:32:52 | 13 |
| 09:32:54 | 14 |
| 09:32:56 | 15 |
| 09:33:00 | 16 |
| 09:33:00 | 17 |
| 09:33:06 | 18 |
| 09:33:06 | 19 |
| 09:33:12 | 20 |
| 09:33:14 | 21 |
| 09:33:18 | 22 |
| 09:33:22 | 23 |
| 09:33:22 | 24 |
| 09:33:24 | 25 |

1    and down below, looks like Mr. Buesgens was represented by his

2    union representative, was unhappy with how that representation

3    was --

4              THE COURT:  But when did he go to the EEOC?  When he

5    thought he wasn't getting an appropriate accommodation in '03, or

6    '04, or '05?

7              MR. ROBINSON:  He's alleging that some of the documents

8    -- some of the evidence that he had at the administrative phase

9    wasn't offered into evidence by his representative or -- and/or

10   Michael Salyards, who's the IRS lawyer who represented the agency

11   during the administrative process.  They had a hearing, they both

12   submitted documents, testimony.

13             THE COURT:  What was the administrative hearing on?

14             MR. ROBINSON:  It was on those three issues, your

15   Honor, the 71 hours of "use or lose," whether we failed to

16   reasonably accommodate his medical condition --

17             THE COURT:  So all that occurred post-March of '05?

18             MR. ROBINSON:  No, your Honor.  That all happened

19   before.  In fact, the hearing was in December of '03.  That's why

20   this was a little difficult case from the government's

21   perspective.  There was a gap in time between the administrative

22   process and March of '05, when Mr. Buesgens was medically

23   retired.

24             THE COURT:  All right.  Mr. Buesgens, why don't you

25   give us your side of it.

09:33:34   1          MR. BUESGENS:  In May, it is correct that I submitted a

09:33:38   2   doctor statement to Martha Schanhals, my IRS manager, to request

09:33:42   3   to be off the phone because of my disability.  At that point,

09:33:46   4   Martha Schanhals' duty was to report that to her territory

09:33:50   5   manager, Melinda Estrada for the EEO.

09:33:54   6          THE COURT:  In May of what year?

09:33:56   7          MR. BUESGENS:  2002.

09:33:56   8          THE COURT:  Okay.  Go ahead.

09:34:00   9          MR. BUESGENS:  At that point, it was her duty to give

09:34:02  10   my medical documentation to her territory manager, Melinda

09:34:06  11   Estrada, and then, to start the reasonable accommodation process,

09:34:14  12   and she didn't do that and she kept my medical information in her

:34:18    13   files in her office, which is a violation of the EEOC

09:34:24  14   regulations.  She kept telling me, you know, to submit doctor's

09:34:30  15   reports to her every 60, or 30 days, or whatever, and so, I did

09:34:36  16   that directly to her.  And then, she just kept them in her office

09:34:42  17   without forwarding them to the EEO -- in-house EEO at the IRS.

09:34:48  18          Then --

09:34:54  19          THE COURT:  Then you'd made a claim of something to the

09:34:58  20   EEOC.

09:34:58  21          MR. BUESGENS:  No, not the EEOC.

09:35:00  22          THE COURT:  All right.

09:35:00  23          MR. BUESGENS:  Not the EEOC.  In-house EEO at the IRS.

09:35:04  24          THE COURT:  Okay.  So the administrative proceeding in

9:35:06   25   December of 2003.  In your view, what was that hearing about?

                    MR. BUESGENS:  My issues there are reasonable

accommodation reassignment, and OPM vacancy in Austin, and the

fact that I was qualified to work other jobs other than the one I

was told I was supposed to take as a Grade 4, and that I could

work those jobs with or without a reasonable accommodation.

                    THE COURT:  All right.  Obviously, there was a

determination sometime there.  The administrative, whoever did

it, made a decision.  Do you remember when they did that?

                    MR. BUESGENS:  December 16th was the hearing, it was

Judge Robert Lynn Powell.  Michael Salyards was the attorney for

the Department of Treasury.  They withheld evidence, documents

that indicate their retaliation of discrimination against me and

my reasonable accommodation reassignment.  I didn't get those

documents until 2005.  I was not aware of them, didn't know

anything about them.  And the administrative judge made a

decision that there was no discrimination or retaliation.

Everything he denied, any claim that I had.

                    Then I appealed it to the EEOC, and I didn't have any

documents to appeal with, so I just sent in some paperwork in

January, I believe it was, of 2004.  Then I did a

reconsideration, all of those were denied.  My disability got

progressively worse because I was required to be on the phone

answering incessant telephone calls from taxpayers all day long,

calling in, not calling out and, you know, many calls a day.

That's what I was trying to get a reasonable accomodation on was

09:37:06    1    to get off that phone and minimize the phone duty.

09:37:10    2         THE COURT:  And then, when you got the EEOC letter from

09:37:14    3    the appeal to the EEOC is when you filed this lawsuit?

09:37:20    4         MR. BUESGENS:  That's correct.

09:37:32    5         THE COURT:  So your position was that back in December

09:37:34    6    of 2003, you had not been granted reasonable accommodation

09:37:42    7    because you should have been reassigned to some other position?

09:37:50    8         MR. BUESGENS:  Well, January of 2003 is when the

09:37:54    9    reasonable accommodation process was going on.  Then, we got to

09:37:58   10    the hearing because I was denied, see, a reasonable

09:38:04   11    accommodation.  During that time in January, there was, also, a

09:38:08   12    TIGTA investigation of me.

:38:10    13         THE COURT:  A what?

09:38:12   14         MR. BUESGENS:  Treasury Inspector General Tax

09:38:14   15    Administration.  They investigated taxes and, also, they

09:38:16   16    investigate employees for misconduct.  And that was a retaliatory

09:38:22   17    investigation initiated by Melinda Estrada, EEO Territory

09:38:26   18    Manager, and her assistant, Angela Gooden-Doyle.  They made a

09:38:30   19    claim that I said something and that started in this Treasury

09:38:36   20    Inspector General investigation.  I had to go to a meeting with

09:38:40   21    them and be interrogated, and I've been trying to get the papers

09:38:44   22    from that investigation, all the documents.  I started trying to

09:38:48   23    get those in 2005, and that's why I've got this FOIA claim in the

09:38:58   24    District of Columbia, because they wouldn't give me all the

09:39:02   25    documents.  I told them they could redact the names on there, and

| | | |
|---|---|---|
| 09:39:04 | 1 | they still wouldn't give them to me.  So I'm claiming that was a |
| 09:39:08 | 2 | retaliatory investigation of me because I tried to get a |
| 09:39:10 | 3 | reasonable accommodation and, you know, requested reassignment. |
| 09:39:16 | 4 | THE COURT:  So what did you think and want in this |
| 09:39:22 | 5 | lawsuit when you filed it? |
| 09:39:26 | 6 | MR. BUESGENS:  I don't understand that. |
| 09:39:28 | 7 | THE COURT:  Well, you have a letter from the EEOC that |
| 09:39:32 | 8 | says you've got a five-year lawsuit in 90 days, or whatever. |
| 09:39:36 | 9 | MR. BUESGENS:  Yes. |
| 09:39:36 | 10 | THE COURT:  You have permission to do that.  When you |
| 09:39:38 | 11 | filed it, what did you want in this lawsuit? |
| 09:39:42 | 12 | MR. BUESGENS:  Compensation. |
| 9:39:46 | 13 | THE COURT:  All right.  From what? |
| 09:39:48 | 14 | MR. BUESGENS:  From the denial of all these -- and the |
| 09:39:52 | 15 | retaliation, the discrimination, retaliation. |
| 09:39:54 | 16 | THE COURT:  From economic damages as a result of the |
| 09:39:56 | 17 | failure to give reasonable accommodation or reassignment? |
| 09:40:00 | 18 | MR. BUESGENS:  That and the mental and physical injury |
| 09:40:02 | 19 | that I endured during that time when I would have -- after I was |
| 09:40:06 | 20 | denied that reasonable accommodation up until I was |
| 09:40:08 | 21 | constructively discharged in March the 7th of 2005.  I was -- had |
| 09:40:14 | 22 | all kinds of problems.  I had to go to the doctor all the time, |
| 09:40:18 | 23 | and different medications, and everything. |
| 09:40:18 | 24 | THE COURT:  Yeah.  Damages as a result.  Okay.  Well, |
| 9:40:22 | 25 | that's what this lawsuit's about.  Whether I call it a |

09:40:28   1  termination of employment or not, it's your objections to their

09:40:30   2  alleged failure to give you a reasonable accommodation, your

09:40:38   3  objections, and their not finding a position of employment that

09:40:42   4  would suit your disabilities, if there was one available; and if

09:40:48   5  you prevail on either of those theories, what damages you had

09:40:52   6  economically and mentally.

09:40:56   7           MR. BUESGENS:  It's more or less that's it.  But see,

09:40:58   8  to understand this case, you have to know the OPM regulations,

09:41:00   9  and EEOC regulations, and the Rehab Act, and put them all

09:41:06   10  together, because they're not using OPM regulations for

09:41:10   11  vacancies.  See, there's all kinds of vacancies available that I

09:41:14   12  could have held.  And all they did was go poll some departments,

09:41:16   13  I don't know, go ask the director of some department:  Do you

09:41:20   14  have any jobs available?  Well, they never do, and if they do,

09:41:22   15  it's a Grade 4.

09:41:24   16           Now, this has happened to other individuals at the IRS.

09:41:26   17  It's a punishment if you seek reasonable accommodation, then they

09:41:30   18  give you the lowest paying job that you have.  For example, I was

09:41:32   19  a Grade 8, step 5, so they wanted me to be a Grade 4.  And that's

09:41:38   20  another thing, you have to understand OPM regulations on

09:41:40   21  disability retirement and how they view how many grades lower you

09:41:44   22  can go before you can get disability retirement.  So this is all

09:41:50   23  connected up.

09:41:52   24           THE COURT:  And you've been retired on disability since

09:41:56   25  March of '05?